OPINION
{¶ 1} Appellant, Ranell Shamar Ziegler, appeals the October 24, 2003 judgment entry of the Trumbull County Court of Common Pleas, in which he was convicted of murder and sentenced.
 {¶ 2} On October 16, 2002, appellant was indicted on one count of murder in violation of R.C. 2903.02(B) and (D). Specifically, he was charged with causing the death of another, A'Lena Ziegler ("A'Lena"), while committing or attempting to commit an offense of violence that is a felony of the first or second degree, to-wit: felonious assault. At his arraignment on October 22, 2002, he entered a plea of not guilty. On December 9, 2002, appellant filed a motion to suppress any and all statements made to law enforcement officers.[1] A suppression hearing was held on June 13, 2002. In an entry dated July 29, 2003, the trial court denied appellant's motion to suppress.
 {¶ 3} On August 18, 2003, appellant filed a motion to dismiss based on a speedy trial claim. After a hearing, the trial court denied the motion to dismiss on September 10, 2003. A jury trial commenced on September 15, 2003. The evidence revealed that on the morning of October 2, 2002, appellant was babysitting his daughter, A'Lena, who was a little over seven months old, while A'Lena's mother, Ashley Croft, went to work. Appellant was residing with another woman, Zakiyah Morris ("Zakiyah"), who was the mother of another one of his children. Zakiyah left for work at approximately 1:45 p.m. Approximately ninety minutes later, appellant called 9-1-1 complaining that A'Lena was not breathing.
 {¶ 4} When the paramedic arrived, he found A'Lena was not breathing and had a poor heart rate. Appellant told the paramedic that he put A'Lena down for a nap and later found her unresponsive face down in the bed. On the way to Trumbull Memorial Hospital, A'Lena had two seizures, and when she arrived at the emergency room, she was comatose. A'Lena was life-flighted to Tod's Children's Hospital in Youngstown, Ohio. During this whole time, appellant stated the he put A'Lena down for a nap, and he was later unable to awaken her.
 {¶ 5} On October 3, 2002, at 11:45 a.m., A'Lena was disconnected from life support and died. A forensic pathologist performed an autopsy on A'Lena on October 5, 2002, which revealed that there were facial abrasions, an old fracture to her right leg, a new fracture to her left leg, and accumulations of fresh blood on the right and left sides of her head. The pathologist attributed the injuries to a blunt force trauma to the head. The pathologist also noted that there were retinal hemorrhages[2] which were consistent with violent shaking. The pathologist opined that blunt craniocerebral trauma was the cause of death. He also stated that A'Lena's injuries could not have occurred as a result of a fall from the bed.
 {¶ 6} Appellant made a statement to the police on October 10, 2002, after A'Lena's funeral. The statement was videotaped, typed, and signed by appellant. In that statement, appellant admitted that on October 2, 2002, he battered A'Lena when she was fussy and distracted him from playing video games. He ordered A'Lena to stop crying, but when she continued, he threw her down on the couch, and she hit her head on the armrest. This caused A'Lena to cry louder, so he smacked her in the forehead twice with his open palm. Appellant then gave the baby a bottle to quiet her. After she fell asleep, he carried her into his bedroom and placed her on his bed. About forty-five minutes later, he heard a thump, but paid no attention to it. Ten minutes later, he checked on A'Lena and found her on the floor not breathing. In an attempt to resuscitate her, appellant picked A'Lena up and started shaking her. After no reaction, he took her to the living room and threw her on the couch. She hit her head on the controller for the "X Box" video game. He proceeded to call 9-1-1. The jury found appellant guilty of murder.
 {¶ 7} Appellant filed a Crim.R. 29 motion for acquittal and a motion for a new trial on September 22, 2003. The trial court denied both motions on September 30, 2003. A sentencing hearing was held. On October 24, 2003, appellant was sentenced to a term of life imprisonment with parole eligibility after fifteen years. It is from that entry that appellant filed the instant appeal and now assigns the following as error:
 {¶ 8} "[1.] The trial court erred to the prejudice of appellant in denying a motion to dismiss the indictment on the ground of the right to a speedy trial.
 {¶ 9} "[2.] The trial court erred to the prejudice of appellant in improperly limiting cross-examination by appellant's counsel of an expert witness for the state.
 {¶ 10} "[3.] The trial court erred to the prejudice of appellant by its refusal to instruct the jury on involuntary manslaughter as a lesser included offense.
 {¶ 11} "[4.] Appellant's right to a fair trial was denied because of ineffective assistance of counsel."
 {¶ 12} Under the first assignment of error, appellant alleges that the trial court erred in denying his motion to dismiss the indictment on speedy trial grounds.
 {¶ 13} The Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury[.]" Pursuant to R.C.2945.71(C)(2), an individual against whom a felony charge is pending must be brought to trial within two hundred seventy days after his arrest. In computing this time, each day a defendant is held in jail, in lieu of bail, counts as three days. R.C. 2945.71(E).
 {¶ 14} Appellant was arrested on October 10, 2002, and did not post bail while awaiting his trial. The ninety day period would have expired on January 8, 2003, unless some event occurred which tolled the running of the time period. However, appellant filed a motion to suppress on December 9, 2002, which was not ruled upon until July 29, 2003.[3] The speedy trial time was tolled through July 29, 2003. State v. Jordan (Oct. 15, 1999), 11th Dist. No. 97-T-0088, 1999 WL 959833, at 5. Hence, when appellant filed the motion to suppress only sixty days had passed, but these particular days are subject to the triple count treatment under R.C. 2945.71(E). Thus, a total of one hundred eight days had lapsed, leaving ninety more days.
 {¶ 15} The time began running again from July 29, 2003, until appellant filed a motion to dismiss on August 18, 2003. The motion was overruled on September 10, 2003. During the period from July 29 through August 18, twenty days passed, or sixty days pursuant to R.C. 2945.71(E), for a total of two hundred forty days. Furthermore, from September 10 until September 15, 2003, when appellant was brought to trial, five days passed, or fifteen pursuant to R.C. 2945.71(E). As a result, when appellant was brought to trial, two hundred fifty-five days had expired. We now turn to the second aspect of appellant's assignment of error.
 {¶ 16} In Barker v. Wingo (1972), 407 U.S. 514, 530, the United States Supreme Court articulated four separate factors to weigh when deciding whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay, i.e., to whom it is attributable; (3) the defendant's assertion of his right; and (4) resulting prejudice to the defendant.
 {¶ 17} Applying the foregoing factors to the instant case, we note that the length of the delay clearly is not grounds for error since only two hundred fifty-five days elapsed between appellant's arrest and the date on which the trial was held. Further, we note that for a substantial portion of the time there were reasons reflected in the record to support the delay in conducting the suppression hearing.[4] Thus, the date on which appellant was ultimately brought to trial was well within the statutorily prescribed speedy trial period. Second, the stated reasons for the delay were valid, and any delays were incurred by both sides. Third, as previously mentioned, appellant failed to assert the alleged violation of his rights during the trial proceedings by objection as required and, hence, waived the issue for purposes of appeal. Fourth, we discern no prejudice suffered by appellant as a result of the delayed trial. In fact, it appears that appellant received a benefit from the delay as it provided his counsel with additional preparation time. Since appellant cannot demonstrate that a constitutional violation occurred, his first assignment of error lacks merit.
 {¶ 18} In the second assignment of error, appellant claims that the trial court erred by limiting his attorney from cross-examining one of the state's expert witnesses, the forensic pathologist.
 {¶ 19} A defendant's right to cross-examine a state's witnesses is guaranteed by the confrontation clause of the Sixth Amendment to the United States Constitution. Douglas v. Alabama (1965), 380 U.S. 415, 418
("[o]ur cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination"). As is true in other evidential matters, the "`extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" State v. Green (1993), 66 Ohio St.3d 141, 147, quotingAlford v. United States (1931), 282 U.S. 687, 691; O'Brien v. Angley
(1980), 63 Ohio St.2d 159, 163 ("the order or ruling of the court will not be reversed unless there has been a clear and prejudicial abuse of discretion"). The trial court may impose reasonable restrictions on the scope of cross-examination based on concerns about harassment, prejudice, confusion of the issues, or relevance of the inquiry. State v.Brown, 11th Dist. No. 2001-T-0146, 2003-Ohio-2364, at ¶ 14, quotingDelaware v. Van Arsdall (1986), 475 U.S. 673, 679.
 {¶ 20} Here, during the re-cross examination of the forensic pathologist, appellant's trial counsel asked him if he had always been correct in the opinions he rendered as to causes of death. Defense counsel then questioned the pathologist about a specific case, in which he was an assistant medical examiner in Syracuse, New York. The state objected to this line of questioning as appellant's attorney was attempting to impeach the pathologist's testimony on re-cross, which the court ultimately sustained. The court stated that appellant's attorney "had an opportunity to cross examine the facts of this case, and whether the [pathologist] has screwed up in the past, I just don't see the relationship to this case." Appellant's attorney made a proffer of the evidence.[5]
 {¶ 21} The scope of cross-examination is governed by Evid.R. 611(A) which grants the court "reasonable control over the mode and order of interrogating witnesses and presenting evidence * * *." Although a defendant has the chance to cross-examine all witnesses against him as a matter of right, the opportunity to re-cross examine a witness is within the discretion of the trial court. State v. Faulkner (1978),56 Ohio St.2d 42, 46. Only where the state inquires into new areas during redirect examination must the trial court allow defense the opportunity to re-cross examine. Id. Although the opportunity for re-cross examination is within the trial court's discretion, the refusal to allow re-cross does not constitute reversible error absent a showing of abuse of discretion. Id; Seley v. G.D. Searle Co. (1981), 67 Ohio St.2d 192. An "abuse of discretion" is more than an error of law or an error in judgment; it is an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
 {¶ 22} After reviewing the record before us, it is our view that the state did not inquire into any new area during redirect examination. No such abuse of discretion is evident in the record. Accordingly, since no new matters were explored, it was not an abuse of discretion for the trial court to limit defense counsel's re-cross examination regarding the impeachment matter.
 {¶ 23} Assuming arguendo that the trial court erred in limiting appellant's attorney's re-cross, appellant was not prejudiced. Any potential error associated with the trial judge's refusal to allow appellant's lawyer to impeach the pathologist during re-cross examination must be considered harmless beyond a reasonable doubt because the outcome of the trial would not have been different. State v. Brown (1992),65 Ohio St.3d 483; State v. Lytle (1976), 48 Ohio St.2d 391. Appellant's second assignment of error is not well-founded.
 {¶ 24} For the third assignment of error, appellant posits that the court erred by refusing to instruct the jury on involuntary manslaughter as a lesser included offense of murder.
 {¶ 25} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus.
 {¶ 26} Murder is defined as "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." R.C. 2903.02(B). R.C. 2903.04(A), the involuntary manslaughter statute, states that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 27} Although involuntary manslaughter is a lesser included offense of murder, a court should give an instruction on the lesser included offense only where the evidence presented at trial is such that the jury could reasonably support both an acquittal on the crime charged and a conviction upon the lesser degree offense. State v. Thomas (1988),40 Ohio St.3d 213, 216. We have stated that "[j]ury instructions of a lesser included offense are not automatically given; there must be some basis for them arising from the law and the evidence of the case." Statev. Streeter (Oct. 26, 1990), 11th Dist. No. 88-T-4170, 1990 WL 162585, at3. The trial court is required to include a charge on a lesser included offense where it may be reasonably inferred from the testimony of the case that an element of the greater offense has not been established beyond a reasonable doubt, but the facts reasonably support the elements of a lesser included offense. Id.; State v. Kidder (1987),32 Ohio St.3d 279.
 {¶ 28} In the case sub judice, the evidence presented at the trial does not reasonably support an acquittal of the murder charge and a conviction on the involuntary manslaughter. Appellant admitted that he inflicted head injuries to A'Lena in an intentional manner before she fell out of the bed. There was insufficient evidence to cause the jury to reject the murder charge in favor of involuntary manslaughter. Therefore, there is no evidence consistent with involuntary manslaughter. Any adult male who throws a seven month old infant down on the couch causing her to hit her head on the armrest and then strikes her two times in the head with his hand, "knows" that this can cause serious harm to a baby. In deciding not to give an instruction on involuntary manslaughter, the trial court explained that:
 {¶ 29} "* * * if there were some evidence that the a [sic] specific blow killed this child, then I think it would be, and if it turned out to be a fall from the bed, [appellant] might be guilty of the involuntarily by having [A'Lena] in his charge and maybe precipitating it. * * * I don't think again that there's any evidence that the Jury can reasonably select that scenario. * * * It has to be speculation on their part. The only thing they know is that injuries were caused to this child. The child was under his care. He admitted to doing the injuries * * *."
 {¶ 30} Because the evidence fulfills the requirements of the offense of murder, we conclude that an acquittal on murder was not reasonably possible, and there was no error in the trial court not instructing the jury on involuntary manslaughter. Accordingly, the trial court committed no error, since no instruction as to a lesser-included offense was warranted by the evidence. Appellant's third assignment of error is meritless.
 {¶ 31} For the fourth and final assignment of error, appellant asserts that he was deprived of a fair trial because he did not receive effective assistance of counsel. Specifically, he alleges that his trial counsel failed to present any evidence in defense of the murder charge.
 {¶ 32} To warrant a reversal on the grounds that appellant was not provided with effective assistance of counsel, he bears the burden of meeting the two-prong test set forth in Strickland v. Washington (1984),466 U.S. 668, 687, which states that:
 {¶ 33} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 34} In order to decide if an attorney's performance was deficient, the trial court must inquire whether the attorney provided "reasonably effective assistance, considering all the circumstances." State v. Loza
(1994), 71 Ohio St.3d 61, 83, citing Strickland, supra. "ASixth Amendment violation does not occur `unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance.' * * *" State v. Goodwin (1999), 84 Ohio St.3d 331,334, quoting State v. Bradley (1989), 42 Ohio St.3d 136, 142. In addition, a properly licensed attorney is presumed to be competent, and thus, judicial scrutiny of his or her performance must be highly deferential. Strickland, 466 U.S. at 689. An attorney's strategic decisions and trial tactics will not support a claim of ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45, 48-49.
 {¶ 35} Under the second prong of the Strickland test, appellant must show that he was prejudiced. To establish prejudice, he must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley,
42 Ohio St.3d at paragraph three of the syllabus. See, also, State v.Stojetz (1999), 84 Ohio St.3d 452, 457. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v.Bays (1999), 87 Ohio St.3d 15, 27.
 {¶ 36} In the case at hand, appellant has not demonstrated that he had an expert who would have presented an opinion that differed from the state's expert, the forensic pathologist. "Establishing that would require proof outside the record, such as affidavits demonstrating the probable testimony. Such a claim is not appropriately considered on a direct appeal. * * *." State v. Madrigal (2000), 87 Ohio St.3d 378, 391. See, also, State v. Scott (1989), 63 Ohio App.3d 304, 308 (claim of failure to present mitigating evidence is properly considered in a post-conviction proceeding because evidence in support of claim could not be presented on direct appeal). Furthermore, appellant has not shown that his counsel's performance was deficient or that he was prejudiced in any way. Hence, we conclude appellant's fourth assignment of error is without merit.
 {¶ 37} For the foregoing reasons, appellant's assignments of error are not welltaken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
Grendell, J., Nader, J., Ret., Eleventh Appellate District, sitting by assignment, concur.
[1] Appellant and the state disagree as to when the motion to suppress was filed with the trial court.
[2] Retinal hemorrhages are the breaking of blood vessels in the back of the eye.
[3] Appellant and the state disagree as to when the motion to suppress was filed. Appellant claims that the motion to suppress does not contain a time-stamped date indicating that it was filed on December 9, 2002. However, at the hearing on the motion to dismiss, the chief deputy for the clerk's office testified that he received and filed a motion to suppress on December 9, 2002. Appellant's attorney at the time, Thomas Wright, further testified that he prepared the motion on December 5, 2002, and mailed the document to the trial court. Appellant did not challenge the authenticity of the document or challenge that it was ever filed. In a nunc pro tunc entry filed October 14, 2003, the trial court noted that all of the parties had acted in reliance of the actual date of the filing, i.e. December 9, 2002. Therefore, that is the date that will be used for purposes of this opinion.
[4] The suppression hearing was set for February 12, 2003, and Attorney Thomas Wright was not in attendance, but Attorney Jeffrey Goodman was. The record reflects that both sides agreed to a reasonable continuance to permit an audio expert to enhance appellant's confession tape and for additional time to allow the dialogue on the tape to be transcribed. The suppression hearing was then reset to March 26, 2003, and then again to April 7, 2003. The hearing did not take place on either of those dates, and the record does not reflect why. Further, on May 15, 2003, at a pretrial, appellant's attorney requested a continuance of the hearing scheduled for May 28, 2003, as he was unavailable on that date. Thus, the hearing was rescheduled to June 13, 2003, when it occurred.
[5] The specific matter that appellant's attorney wished to question the pathologist about on re-cross involved a case in which he allegedly ruled that a homicide did not occur in Syracuse. After learning that a confession was made in the matter, the pathologist supposedly reclassified the death as a homicide. Appellant's attorney also wanted to question the pathologist about the conclusions he reached regarding a twenty-three month old child in Washington, D.C., while he was the medical director. In that case, he testified that the child died of blunt force injuries. However, the pathologist's successor later changed the cause of death by concluding that malnutrition was the primary cause of death. Appellant's trial counsel noted that this was one of several cases in Washington D.C., which led to an investigation by the Washington Post.