OPINION
{¶ 1} Mr. Jackson McFeely appeals his conviction for driving under the influence and failure to control a motor vehicle. After he damaged two yards and drove through a line of bushes and crashed into a tree, he returned his vehicle to the road and successfully managed to arrive at his house located a half-mile away. Mr. McFeely argues that there was insufficient evidence supporting his conviction because the date of the traffic ticket was incorrect and that the trial court abused its discretion in *Page 2 
amending the complaint to reflect the proper date and in limiting the cross-examination of the trooper on this issue. All of the other evidence presented, including the summons on the ticket, the police report of the investigation, and the witness' testimony, established the charged conduct occurred on or about the date noted on the ticket.
 {¶ 2} We find no abuse of discretion in the trial court's decision to allow the trooper to give his lay opinion as to impairment. Moreover, the weight of the evidence does not support Mr. McFeely's assertion that his driving was not the product of intoxication, but as a result of him falling asleep at the wheel. Most notably, he readily admitted to causing the crash and having "enough" to drink on the video tape of the crash investigation. Thus, we affirm.
 {¶ 3} Substantive and Procedural Facts
 {¶ 4} On the night of May 2, 2008, Mr. McFeely, a self-employed truck driver, returned from a three-day trip of trucking goods. After taking his girlfriend's two children to their father, he met his girlfriend, Ms. May Cauthey, at a bar for a burger and a few beers. After walking around the mall and then driving his girlfriend home, Mr. McFeely headed home.
 {¶ 5} Mr. Robert Valitsky, one of the victims whose yards were damaged, testified that as he was getting ready for bed he heard the squealing of tires. He observed a vehicle out of control, driving through his neighbor's front yard where it took out a tree and part of the tree line before returning to the street. Mr. Valitsky ran outside and yelled at the driver in the truck to stop. When the driver did not, Mr. Valitsky gave chase and called 911. He followed Mr. McFeely to his home, which is about a half-mile *Page 3 
away from where the incident occurred, and gave dispatch the license plate number and a description of the vehicle and the driver.
 {¶ 6} Ohio State Highway Patrol Trooper Scott Balcomb was dispatched to the one vehicle "hit/skip" crash scene. He spoke with Mr. Valitsky and took his written statement, noting there were no markings on the road. In his opinion, this indicated that the car veered suddenly off the road on the right-hand side, causing the subsequent damage. Trooper Balcomb also testified that he suspected Mr. McFeely was intoxicated before he arrived at his residence. In his opinion, someone who flees the scene of an accident usually has something to hide.
 {¶ 7} Trooper Balcomb then went to Mr. McFeely's residence, where he found Mr. McFeely's damaged truck sitting in the driveway. His landlord came out of the adjacent home and retrieved Mr. McFeely for the officer. When Mr. McFeely came to the door in his boxer shorts, his eyes were bloodshot and glossy, his speech was slow and slurred, and he emitted the odor of alcohol. Trooper Balcomb requested that he dress and return for a statement. Before going inside, he admitted that he caused the accident and that he had been drinking.
 {¶ 8} Trooper Balcomb continued to investigate the damaged vehicle. When Mr. McFeely returned, he refused the officer's request for a written statement. He admitted that he had "enough" to drink and that he "should have gone home," exclaiming on the video tape, "Man, Did I go off the road or what!" and then wondered out loud if he damaged the house as well. At that point, Trooper Balcomb again asked Mr. McFeely if he wished to write a statement, which he declined for the second time. Trooper Balcomb informed Mr. McFeely that he was issuing him a citation for driving a *Page 4 
vehicle while impaired and for failure to control his vehicle. He agreed half-heartedly with the trooper that he should have called a taxi if he felt too inebriated to drive, muttering an "I guess." Mr. McFeely refused to take any coordination skills tests, and after some persuasion, signed the ticket.
 {¶ 9} Mr. McFeely testified in his own defense, claiming that the accident did not occur due to intoxication, but due to his lack of sleep. He explained that when he admitted on the video tape that he had "enough" to drink, he meant "enough" to know when he was not supposed to be driving. He further testified that he only had two beers between 4:00 p.m. to 7:30 p.m., when he and Ms. Cauthey were at the pub. Ms. Cauthey was also prepared to testify in his defense as to the events leading up to the crash. Unfortunately, she had suffered a brain aneurysm and was in the hospital at the time of the trial.
 {¶ 10} After the state rested its case-in-chief, Mr. McFeely moved for a Crim. R. 29 acquittal on the basis that the charged conduct was erroneously recorded on the ticket as occurring on May 3, instead of the actual date, May 2. The ticket did, however, document the correct date on the service portion, documenting that Mr. McFeely was "served personally on May 2, 2008." The court denied Mr. McFeely's motion for acquittal and amended the complaint, finding the error to be merely clerical. There was no confusion as to the other evidence presented, including the officer's statement, which was written contemporaneously with the citation. The amended date of the charged conduct did not change the nature or identity of the offense charged, nor did it cause confusion or prejudice Mr. McFeely in preparation of his defense. The court also denied Mr. McFeely's request to cross-examine Trooper Balcomb regarding the *Page 5 
incorrect date of the citation to impeach the officer's credibility, finding it would only serve to confuse the jurors. The court did allow Mr. McFeely to address the error in his closing argument.
 {¶ 11} The jury returned a verdict of guilty on one count of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. Mr. McFeely was also found guilty of the second charge, failure to control a motor vehicle, pursuant to R.C. 4511.202, a minor misdemeanor, in a bench trial held after the jury rendered its verdict on the OVI charge.
 {¶ 12} Mr. McFeely was sentenced to serve five days in jail for the OVI, followed by probation for one year. His license was suspended for one year, and he was ordered to pay a fine of $650 for the OVI, $25 for failure to control his motor vehicle, as well as court costs. The court granted Mr. McFeely's motion for a stay of his sentence pending this appeal.
 {¶ 13} Mr. McFeely raises six assignments of error:
 {¶ 14} "[1.] The trial court erred by denying the defense motion for acquittal.
 {¶ 15} "[2.] The trial court erred by amending the complaint after the prosecution had rested.
 {¶ 16} "[3.] The trial court erred by improperly restricting trial counsel's ability to impeach the key prosecution witness.
 {¶ 17} "[4.] Appellant was deprived of the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article 1 of the Ohio Constitution due to the failure of trial counsel to request a continuance to permit the attendance of an important defense witness. *Page 6 
 {¶ 18} "[5.] The trial court erred by improperly permitting the introduction of lay opinion on the issue of Appellant's guilt.
 {¶ 19} "[6.] Appellant's convictions are against the manifest weight of the evidence."
 {¶ 20} The Date of the Offense on the Citation and Sufficiency
 {¶ 21} Mr. McFeely first contends that the evidence is insufficient to support his conviction for operating a motor vehicle while impaired because the date charged on the traffic citation was erroneous. He argues that the state failed to establish a prima facie case since the state did not introduce any evidence regarding Mr. McFeely's conduct on the erroneous date of May 3. This contention is without merit, as the court properly amended the traffic citation at the close of the state's case-in-chief. Moreover, the amendment did not change the identity or the nature of the offense, and there was no confusion as to when the charged conduct occurred.
 {¶ 22} The traffic citation listed the proper date on the service portion documenting that Mr. McFeely was served on May 2. Trooper Balcomb also correctly dated his report written contemporaneously with his investigation on May 2.
 {¶ 23} "[T]he standard of review for a sufficiency of the evidence claim is `whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. * * *' (Citations omitted.) `In essence, sufficiency is a test of adequacy[;] [w]hether the evidence is *Page 7 
legally sufficient to sustain a verdict * * * *.'" State v. Reeds, 11th Dist. No. 2007-L-120, 2008-Ohio-1781, ¶ 70, quoting State v. Pesec, 11th Dist. No. 2006-P-0084, 2007-Ohio-3846, ¶ 45, citing State v.Thompkins (1997), 78 Ohio St.3d 380, 386. "Thus, sufficiency of the evidence tests the burden of production." Id., citing Pesec at ¶ 45, citing Thompkins at 390.
 {¶ 24} Mr. McFeely argues that because the citation contained an erroneous date an essential element of the charge was not proven beyond a reasonable doubt. Thus, he contends the state failed to carry its burden of production of sufficient evidence to establish that Mr. McFeely was operating a motor vehicle while he was intoxicated on the night of May 2.
 {¶ 25} Mr. McFeely was convicted of R.C. 4511.19(A)(1)(a), which reads in relevant part: "No person shall operate any vehicle * * * under the influence of alcohol."
 {¶ 26} "[A] traffic ticket `* * * will satisfy the legal requirements, if it apprises the defendant of the nature of the charge together with a citation of the statute or ordinance involved. * * *'" State v. AlleyJr., 11th Dist. No. 2006-P-0070, 2007-Ohio-4483, ¶ 19, citing Niles v.Antonelli (Feb. 7, 1992), 11th Dist. No. 91-T-4538, 1992 Ohio App. LEXIS 472, 6, quoting Cleveland v. Austin (1978), 55 Ohio App.2d 215, 220. The purpose of a traffic complaint, "like a felony indictment, is designed to inform a defendant of the charge against which he must defend." Id. at ¶ 21, see, Barberton v. O'Connor (1985), 17 Ohio St.3d 218, 221.
 {¶ 27} Mr. McFeely was well aware of the nature of the charged conduct as the correct offense appeared on the citation and the summons portion of the ticket was *Page 8 
correctly dated. With that being said, the critical fact is that the date, quite simply, is not an essential element of the offense charged.
 {¶ 28} In a similar case, State v. Green (Nov. 4, 1988), 11th Dist. No. 1895, 1988 Ohio App. LEXIS 4393, the officer testified the violation occurred on May 2, 1987. The traffic citation, however, was originally dated May 1, and then amended to read May 2, with no explanation for the alteration. We affirmed the trial court's decision permitting an amendment to the complaint to reflect the violation occurred on May 2. We explained: "* * * the precise date is not an essential element of the offense charged. Furthermore, appellant had notice of the nature of the offense and was not deprived of a reasonable opportunity to prepare a defense." Id. at 8.
 {¶ 29} Mr. McFeely fails to present any evidence of confusion as to the conduct charged or prejudice in the preparation of his defense. "Ordinarily, precise times and dates are not essential elements of offenses. Thus, the failure to provide dates and times in an indictment will not alone provide a basis for dismissal of the charges. A certain degree of inexactitude of averments, where they relate to matters other than elements of the offense, is not per se impermissible or necessarily fatal to a prosecution." State v. Miller, 5th Dist. No. 2006CA00030,2006-Ohio-6236, ¶ 22, quoting State v. Sellards (1985),17 Ohio St.3d 169, 171. "The State is not required to prove that an offense occurred on any specific date, but rather may prove that the offense occurred on a date reasonably near that charged in the indictment." Id., quotingState v. Jewell, 5th Dist. No. 01CAA03006, 2002-Ohio-226 (citation omitted).
 {¶ 30} While there was clearly an error in the precise date charged on the traffic citation, it was a harmless and clerical error. The traffic citation listed the offenses *Page 9 
charged with sufficient specificity noting that the pavement was wet, that the night was cloudy, the conditions were not adverse, and that the crash occurred on a two-lane rural road. The offenses are listed properly as OVI in violation of R.C. 4511.19(A)(1), and failure to control a motor vehicle in violation of R.C. 4511.202. Furthermore, the service portion of the ticket was properly dated as May 2, 2008. There is no confusion as what conduct was being charged and when it was served. See State v. Meyers (Jan. 8, 1982), 6th Dist. No. L-81-205, 1982 Ohio App. LEXIS 14425 (where the court determined in a similar situation that this error "did not affect or alter appellant's substantial rights, and such clerical error constituted harmless error"). Id. at 3.
 {¶ 31} Even if the complaint was not properly amended, the evidence presented is still sufficient to prove that Mr. McFeely drove a motor vehicle while impaired on the night of May 2. Trooper Balcomb arrived at Mr. McFeely's at approximately 11:00 p.m. on the night of May 2. The video tape of the investigation ends in the early midnight hour of May 3. Trooper Balcomb's statement written at the time of the investigation was properly dated, as was the summons portion of the ticket. The video tape of the investigation displayed the date and time, and both Trooper Balcomb and Mr. Valitsky testified the crash occurred on May 2. Mr. McFeely admitted he caused the crash, both on the video tape of the investigation and at trial. Thus, the state introduced sufficient evidence that Mr. McFeely drove a motor vehicle while impaired on the night of May 2, notwithstanding that the ticket dated the charged offense as occurring on May 3. Therefore, we determine that the state carried its burden of production of evidence that the charged conduct occurred on May 2, 2008.
 {¶ 32} Mr. McFeely's first assignment of error is without merit. *Page 10 
 {¶ 33} Amendment of the Complaint for Clerical Error
 {¶ 34} In his second assignment of error, Mr. McFeely challenges the court's action in amending the date of the charged conduct on the traffic citation to May 2. Mr. McFeely argues that the court abused its discretion in doing so because the state had already rested its case-in-chief. Pursuant to Crim. R. 7(D), the court may amend a complaint "at any time, before, during or after trial * * *." Thus, we find this argument to be without merit.
 {¶ 35} "Since the Ohio Traffic rules direct that `the Rules of Criminal Procedure and the applicable law apply' whenever the Traffic Rules fail to provide specified procedures, Crim. R. 7(D) governs amendments of traffic ticket complaints." Green at 7, quotingCleveland Heights v. Perryman (1983), 8 Ohio App.3d 443. Thus, "[t]he court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." State v. Bandy, 11th Dist. No. 2007-L-089, 2008-Ohio-1494, ¶ 24, quoting Crim. R. 7(D). Further, "[t]his court has held `an indictment may be amended to correct a clerical error so long as it does not change the identity of the offense.'" Id., quoting State v. Cloughlin, 11th Dist. No. 2006-A-0026, 2007-Ohio-897, ¶ 38, quoting State v. Earle (1997), 120 Ohio App.3d 457, 467.
 {¶ 36} "A trial court's decision to amend an indictment is reviewed under an abuse of discretion standard." Id. at ¶ 25, citing State v.Perales, 5th Dist. No. 06-CA-A-12-0093, 2008-Ohio-58, ¶ 140 (citation omitted); State v. Beach, 148 Ohio App.3d 181, *Page 11 2002-Ohio-2759, ¶ 23 (citation omitted); State v. Mundy (1994),99 Ohio App.3d 275, 313.
 {¶ 37} The Supreme Court of Ohio recently explained in State v.Davis, Ohio St.3d, 2008-Ohio-4537, that "Crim.7(D) does not permit the amendment of an indictment when the amendment changes the penalty or degree of the charged offense" and that "amending the indictment to change the penalty or degree changes the identity of the offense." Id. at syllabus.
 {¶ 38} As we discussed in the first assignment of the error, changing the date of the charged conduct on the traffic citation was merely correcting a clerical error. Neither the penalty nor the degree was changed in this case, nor was there confusion as to the nature of the charged conduct that Mr. McFeely admitted to causing on May 2. As we held in Green, the "precise date is not an essential element of the offense charged. Furthermore, appellant had notice of the nature of the offense and was not deprived of a reasonable opportunity to prepare a defense. * * * [T]he amendment is simply a clarification in a manner consistent with the original complaint. The amendment does not violate Crim. R. 7(D) in that it does not change the name or identity of the crime charged." Id. at 8-9.
 {¶ 39} Mr. McFeely's argument that the timing of the amendment changed the nature and identity of the charged offense is without merit because pursuant to Crim. R. 7(D) the trial court is free to correct a clerical error at any time "before, during, or after
 {¶ 40} We find no abuse of discretion in the court's amendment as the court merely amended the date to conform to the evidence presented in this case. *Page 12 
 {¶ 41} Mr. McFeely's second assignment of error is without merit.
 {¶ 42} Limitation of Cross-Examination
 {¶ 43} Mr. McFeely contends in his third assignment of error that the trial court erred by restricting his ability to impeach Trooper Balcomb with his error on the citation. He contends the court's limitation of this line of questioning infringes on his right of cross-examination and his right to impeach a witness' credibility, thus depriving him of a fair trial. He argues that he should have been allowed to re-cross the trooper based on the incorrect date of the charged conduct on the traffic citation because he believes this error impacted the credibility of the trooper as a witness. The court denied Mr. McFeely's Crim. R. 29 motion for acquittal, amended the complaint, and denied Mr. McFeely's request to re-cross Trooper Balcomb on the clerical error of the charged date on the traffic citation out of concern of creating confusion for the jury on a trivial matter. Moreover, the court allowed Mr. McFeely to address the error in charging the wrong date during closing arguments. Thus, the jury was well aware that the trooper wrote the wrong date on the traffic citation as to the charged conduct.
 {¶ 44} We agree with the trial court that this line of questioning would have only confused the jurors. Furthermore, the court gave Mr. McFeely the opportunity to address the error of the trooper's credibility during closing arguments, which presented the matter to the jurors in a more coherent fashion. We cannot say the court abused its discretion in handling the amendment of the citation on such a minor matter that had the potential to cause major confusion and detract from the necessary elements of the case. *Page 13 
 {¶ 45} "A defendant's right to cross-examine the state's witnesses is guaranteed by the confrontation clause of the Sixth Amendment to the United States Constitution." State v. Totarella, 11th Dist. No. 2002-L-147, 2004-Ohio-1175, ¶ 39, quoting Douglas v. Alabama (1965),380 U.S. 415, 418. "As is true in other evidentiary matters, the `extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" Id., citing State v.Green (1993), 66 Ohio St.3d 141, 147, quoting Alford v.United States (1931), 282 U.S. 687, 691; O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. "Moreover, the trial court may impose reasonable restrictions on the scope of cross-examination based on concerns about harassment, prejudice, confusion of the issues, or relevance of the inquiry." Id., citing State v. Brown, 11th Dist. No. 2001-T-0146, 2003-Ohio-2364, ¶ 14, quoting Delaware v. Van Arsdall (1986),475 U.S. 673, 679. See, also, State v. Airwyke, 2006-T-0073, 2007-Ohio-3199, ¶ 33.
 {¶ 46} Even if we assumed that the trial court erred in limiting Mr. McFeely to re-cross Officer Balcomb, Mr. McFeely was not prejudiced and such error would be harmless. It does not go to the essential elements of the charges and would not have changed the outcome of the trial. See,State v. Ziegler, 11th Dist. No. 2003-T-0168, 2005-Ohio-1099, ¶ 23.
 {¶ 47} Mr. McFeely's third assignment of error is without merit.
 {¶ 48} Effective Assistance of Counsel and Failure to CallWitness
 {¶ 49} In his fourth assignment of error, Mr. McFeely contends that he was deprived of the effective assistance of counsel because his counsel did not request a continuance in order to allow his girlfriend, Ms. Cauthey, to testify. Ms. Cauthey was hospitalized for a brain aneurism at the time of trial. Mr. McFeely argues that she would *Page 14 
have corroborated his account of the events, and that but for his counsel's failure to seek a continuance to allow her to testify, the result would have been otherwise. We find this argument to be without merit because Mr. McFeely's counsel presented evidence through Mr. McFeely's testimony that Ms. Cauthey was prepared to testify in his defense and that she was currently hospitalized. Further, Mr. McFeely fails to state with any specificity how Ms. Cauthey's testimony would have rendered the jury's verdict otherwise.
 {¶ 50} "`[W]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.' * * * The [Supreme Court of Ohio] recognized that there are `(* * *) countless ways to provide effective assistance in any given case.'" State v.Sands, 11th Dist. No. 2007-L-003, 2008-Ohio-6981, ¶ 35, quotingState v. Vinson, Jr., 11th Dist. No. 2006-L-238, 2007-Ohio-5199, ¶ 29, citing State v. Allen (Sept. 22, 2000), 11th Dist. No. 99-A-0050, 2000 Ohio App. LEXIS 4356, 10, citing State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland v. Washington (1984), 466 U.S. 668,687-689. Thus, the court's "judicial scrutiny of counsel's performance must be highly deferential." Id.
 {¶ 51} "`[B]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (* * *).' Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Id. (Parallel citations omitted.) Thus, "[t]o warrant *Page 15 
reversal, `the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' * * *" Id. at ¶ 36, quoting Vinson Jr. at ¶ 30, citing Allen at 10-11, citingBradley at 142, quoting Strickland at 694.
 {¶ 52} "`Strategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available * * *.' Thus, `[e]rrors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel.'" Id. at ¶ 37, quoting Vinson at ¶ 31, quotingAllen at 11.
 {¶ 53} We have no doubt and agree with Mr. McFeely that had Ms. Cauthey testified, she would have corroborated his account of events leading up to the crash. But that does not belie the overwhelming evidence of Mr. McFeely's guilt in that he admitted to causing the crash, that he had "enough" to drink, and that he probably should not have been driving. This is not even a case where the uncalled witness was an alibi witness, but rather Ms. Cauthey would have merely corroborated his testimony regarding the events leading up to the crash, and agreed with Mr. McFeely's defense that he was not inebriated, but tired. Further, Mr. McFeely did not proffer Ms. Cauthey's testimony or submit her affidavit. We fail to see how but for her testimony, the result of the trial would have been different. In fact, the jury was aware that Ms. Cauthey would have testified and corroborated Mr. McFeely's version of events, and that she was unable to testify due to her unfortunate illness. *Page 16 
 {¶ 54} "[Generally an attorney's decision whether to call a witness falls under the rubric of trial strategy, and as such, an appellate court will not second-guess the attorney's decision, even if the decision was debatable." State v. Young, 3d Dist. Nos. 13-08-21, 13-08-22, and 13-08-23, 2008-Ohio-6072, ¶ 13, citing State v.Fritz, 3d Dist. No. 13-06-39, 2007-Ohio-3138, ¶ 39, citing State v.Williams, 99 Ohio St.3d 493, 2003-Ohio-4396; State v. Clayton (1980),62 Ohio St.2d 45.
 {¶ 55} The decision of Mr. McFeely's counsel in not requesting a continuance purely for a corroboration witness is in the purview of trial strategy, and without a proffer of her expected testimony, we cannot say the choice was even debatable. Nor can we say that Mr. McFeely evidenced prejudice as a result and that the trial would have been otherwise. "[T]he failure to call witnesses, absent a showing of prejudice, is not sufficient by itself to establish a claim of ineffective assistance of counsel." Id. at ¶ 14, citing State v.Brown, 2d Dist. No. 19776, 2003-Ohio-5738, ¶ 30, citing State v.Hector, 2d Dist. No. 18653, 2002-Ohio-1200. See, also, State v.Battle, 10th Dist. No. 06AP-863, 2007-Ohio-1845, ¶ 16-18.
 {¶ 56} Mr. McFeely has not established any prejudice from his counsel's failure to request a continuance so that Ms. Cauthey could testify as to his version of events nor has he overcome the strong presumption that his counsel's failure to request such a continuance was not a sound trial strategy. Ms. Cauthey was not present during the crash and she was not present during the ensuing investigation at Mr. McFeely's home, where he admitted on the video tape to causing the crash, having "enough" to drink, and that he "probably should not have been driving." Thus, we determine that Mr. McFeely's *Page 17 
failure to request a continuance does not constitute ineffective assistance of counsel in this case.
 {¶ 57} Mr. McFeely's fourth assignment of error is without merit.
 {¶ 58} Lay Opinion of a Police Officer
 {¶ 59} In his fifth assignment of error, Mr. McFeely argues that the trial court improperly permitted Trooper Balcomb to testify that in his opinion Mr. McFeely was guilty of driving a motor vehicle while intoxicated. He specifically objects to the trooper's testimony that in his experience when a person flees the scene of an accident, they tend to have "something to hide." Mr. McFeely contends this testimony was so prejudicial and inflammatory that his conviction should be reversed. We disagree with this contention and find this argument to be without merit as it is well established that an officer may give his lay opinion as to whether a defendant is intoxicated and his rationale to support that conclusion.
 {¶ 60} "The determination to admit or exclude evidence is within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion." Sands at ¶ 156, citing VinsonJr. at ¶ 48, citing State v. Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, ¶ 20, citing State v. Rootes (Mar. 23, 2001), 11th Dist. No. 2000-P-0003, 2001 Ohio App. LEXIS 1391, 4-5, citing Renfro v.Black (1990), 52 Ohio St.3d 27, 32. Abuse of discretion connotes more than error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Id., citing VinsonJr. at ¶ 48, citing State v. Montgomery (1991), 61 Ohio St.3d 410, 413, quoting State v. Adams (1980), 62 Ohio St.2d, 151, 157. *Page 18 
 {¶ 61} Mr. McFeely objected to the following colloquy that occurred while the trooper was testifying and the dash cam video was being played for the jury:
 {¶ 62} "The State: You just made a statement there [on the video tape]. Did you hear that statement?
 {¶ 63} "Trooper Balcomb: Yes, I did.
 {¶ 64} "The State: And why did you make that statement?
 {¶ 65} "Trooper Balcomb: Through my training and experience, when a vehicle-somebody is involved in a traffic crash, a normal, prudent person is going to stay at the traffic crash if they have nothing to hide. I felt that — .
 {¶ 66} "Defense Counsel: Objection.
 {¶ 67} "The Court: Overruled.
 {¶ 68} "Trooper Balcomb: I felt that Mr. McFeely had something to hide. That's why he continued on home to his residence.
 {¶ 69} "The State: And at that point, did you make a determination whether or not to charge Mr. McFeely with the offense of OVI?
 {¶ 70} "Trooper Balcomb: No I did not."
 {¶ 71} It is well established that "a police officer may provide lay testimony under Evid. R. 701 as to his or her opinion concerning a defendant's state of intoxication." State v. Wargo, 11th Dist. No. 96-T-5528, 1997 Ohio App. LEXIS 4846, 8, citing State v. Butler (Feb. 16, 1990), 11th Dist. No. 89-P-2075, 1990 Ohio App. LEXIS 524, 2-3. "Under Evid. R. 701, a lay witness can give opinion testimony if the opinion is rationally based on the perception of the witness and is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue. Sobriety or lack thereof is *Page 19 
commonly recognized by courts to be within the perception of a lay witness. In order to be admissible, the state must establish the proper foundation by eliciting testimony from the witness to the effect that he or she has had previous experience observing intoxicated people." Id. at 8-9.
 {¶ 72} The state laid such a foundation with Trooper Balcomb, who testified that he had been trained and is well-experienced in handling intoxicated persons. Further, "[t]his court has previously observed that `unlike the objective standards used to define the per se violations of R.C. 4511.19(A)(2) through (A)(4), a driving under the influence charged under R.C. 4511.19(A)(1) is generally proven through the more subjective observations of law enforcement officers.'" State v. Burdick (May 26, 2000), 11th Dist. No. 98-G-2209, 2000 Ohio App. LEXIS 2264, 16, citingWargo at 12.
 {¶ 73} We find no abuse of discretion in permitting the trooper to express his opinion as it was helpful in determining whether or not Mr. McFeely was driving intoxicated on the night of May 2 when he drove off the road and crashed through two lawns. It was a factor, among many, of the trooper's assessment that sufficient probable cause existed to charge Mr. McFeely with driving a motor vehicle while intoxicated.
 {¶ 74} Mr. McFeely's fifth assignment of error is without merit.
 {¶ 75} Manifest Weight of the Evidence
 {¶ 76} Lastly, Mr. McFeely challenges the manifest weight of the evidence, arguing that the state presented no test results or expert testimony regarding his intoxication. Mr. McFeely contends that the state relied only on the testimony of the trooper and Mr. Valitsky. He contends this testimony is far outweighed by his own *Page 20 
testimony, especially in regard to his testimony that he just returned from a "long-haul," thus establishing that his fatigue, and not intoxication, was the cause of the accident. Thus, he argues the manifest weight of the evidence supports an acquittal, not a conviction, and thus, his conviction should be reversed. We disagree, determining that the manifest weight of the evidence weighs heavily in support of the jury's finding of guilt.
 {¶ 77} "When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered." Reeds at ¶ 92, quoting State v. Armstrong, 11th Dist. No. 2007-G-2756, 2007-Ohio-6405, ¶ 15, citing Pesec at ¶ 74, citingState v. Floyd, 11th Dist. No. 2005-T-0072, 2006-Ohio-4173, ¶ 8, citingState v. Martin (1983), 20 Ohio App.3d 172, 175. See, also,Thompkins at 387.
 {¶ 78} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction." Id. at ¶ 88, citing Armstrong at ¶ 16, citing Pesec at ¶ 75, citing Floyd at ¶ 9, citing Martin at 175. "The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion." Id., citingPesec at ¶ 75, citing Floyd at ¶ 9, citing Thompkins at 390 (Cook, J., concurring). "The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given to the evidence and credibility of witnesses." Id., *Page 21 
citing Pesec at ¶ 75, citing Floyd at ¶ 9, citing State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 79} Based on the evidence and testimony at trial, we cannot conclude the jury so lost its way or created a manifest miscarriage of justice when it convicted Mr. McFeely for driving a motor vehicle while impaired. Mr. McFeely admitted on the video tape of the investigation that he had "enough" to drink, that he caused the crash and fled the scene, and that he probably should not have been driving. Mr. Valitsky, the eyewitness victim whose lawn was damaged, testified that he followed the driver home, took down his license plate number, and informed the police as to the location of the crash and the driver's home.
 {¶ 80} Trooper Balcomb testified as to his investigation of the crash, which included the scene and Mr. McFeely's truck at his residence. Mr. McFeely's sobriety or lack thereof was evidenced by the video tape, and Trooper Balcomb testified that Mr. McFeely had bloodshot, glossy eyes, that he smelled of alcohol, which he later tried to cover with a piece of candy, and that his speech was slow and slurred. Further, Mr. McFeely admitted on the video tape that he drank before driving, that he caused the crash, and that he should not have been drinking. Mr. McFeely refused to make a written statement and refused to conduct any field sobriety tests.
 {¶ 81} Although Mr. McFeely attributes the cause of the crash to his fatigue from a long journey on the road, the jury was free to believe that the cause of the crash was due to intoxication. "It is well-settled that when assessing the credibility of witnesses, `[t]he choice between credibility of witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that *Page 22 
of the finder of fact.'" Id. at ¶ 92, quoting Armstrong at ¶ 29, citingState v. McKinney Jr., 11th Dist. No. 2006-L-169, 2007-Ohio-3389, ¶ 49, citing State v. Grayson, 11th Dist. No. 2006-L-153, 2007-Ohio-1772, ¶ 31, citing Awan at 123. "Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict." Id., quoting Pesec at ¶ 78.
 {¶ 82} In short, the jury was free to believe the version of events presented by the evidence and testimony of Trooper Balcomb and Mr. Valitsky over Mr. McFeely's. Our review of the above evidence reveals that the manifest weight of the evidence strongly supports the jury's verdict.
 {¶ 83} Mr. McFeely's sixth assignment of error is without merit.
 {¶ 84} The judgment of the Ashtabula County Court, Western District, is affirmed.
CYNTHIA WESTCOTT RICE, J., TIMOTHY P. CANNON, J., concur. *Page 1